UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BENJAMIN A. MURPHY,

Plaintiff,

v.

FRANK BISIGANO, COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CAUSE NO. 3:25cv400 DRL-SJF

OPINION AND ORDER

Benjamin A. Murphy appeals the Social Security Commissioner's decision denying supplemental security income. He requests that the final agency decision be vacated and the matter remanded for further proceedings. Having reviewed the underlying record and the arguments on appeal, the court affirms the Commissioner's decision.

BACKGROUND

Mr. Murphy filed a Title XVI Supplemental Security Income benefits application on May 27, 2022, alleging disability beginning April 27, 2022 [R. 151-56]. His application was denied initially on January 3, 2023 [R. 89] and denied on reconsideration on June 21, 2023 [R. 100]. Mr. Murphy appeared before Administrative Law Judge (ALJ) Dina LaMarche on January 8, 2024, for an administrative hearing [R. 33-70].

Mr. Murphy suffers from several impairments determined to be severe by the ALJ: asthma/chronic obstructive pulmonary disease status post partial left lung lobectomy (removal of a lobe or section of the lung), obesity, depression, and anxiety [R. 21]. In a May 8, 2024 decision, the ALJ found that Mr. Murphy has the residual functional capacity (RFC) to perform

sedentary work, subject to certain limitations [R. 22-26]. The ALJ concluded, based on testimony from a vocational expert, that Mr. Murphy is capable of successfully adjusting to "other work that exists in significant numbers in the national economy" [R. 27]. The ALJ thus found Mr. Murphy to be "not disabled" and denied the petition [R. 27-28]. The decision became final when the Appeals Council denied Mr. Murphy's request for review on March 31, 2025 [R. 1-3].

STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g). Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and [the] conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply a standard five-step analysis to determine whether (1) the claimant is currently employed, (2) the claimant's impairment or combination of impairments is severe, (3) his impairments meet or

exceed any of the specific listed impairments that the Secretary acknowledges to be so severe as to be conclusively disabling, (4) given the claimant's residual function capacity (and when the impairment has not been listed as conclusively disabling), the claimant is unable to perform his former occupation, and (5) the claimant is unable to perform any other work in the national economy given his age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Sec'y of Health & Hum. Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform work in the economy. *See Young*, 957 F.2d at 389.

Per the administrative decision, Mr. Murphy met his burden at each step (save a listed and conclusive finding of disability), but he could perform other work in the national economy. In short, the ALJ concluded that Mr. Murphy, not currently employed, had severe impairments that prevented his work in his former occupations (as landscaper and auto parts clerk) but permitted his work in jobs that existed in significant numbers in the national economy [R. 21-27]. In particular, Mr. Murphy could perform sedentary work, excepting certain tasks identified by the ALJ, meaning he could still work as a charge account clerk, circuit board tester, and information clerk [R. 22-23, 27]. Mr. Murphy argues that the RFC finding was not supported by substantial evidence because the ALJ failed to consider his obesity properly.

An ALJ "must consider the limiting effects of obesity when assessing a person's RFC" and "explain how [she] reached [her] conclusion on whether obesity causes any limitations." SSR 19-2p (May 20, 2019), 2019 SSR LEXIS 2, 12. Even when a claimant does not cite obesity as an impairment when filing his disability report, the ALJ must consider the effects of all sufficiently evidenced ailments. 20 C.F.R. § 404.1512(a)(1); *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000).

Mr. Murphy stands 5'7" and weighs 229 pounds at last report during his 2024 administrative hearing (215 pounds in 2023, and 230 pounds in 2021 per his medical records), which placed his body mass index within the category of obese [R. 42, 271, 375]. *See* SSR 19-2p. One of his treaters before suggested that "weight loss might benefit his health," and, though exercise seemed to prove difficult for him because of pain, other suggestions were made, including, for instance, reducing his intake of Mountain Dew (four cans daily) [R. 286]. In 2023, again his treating practitioner recommended weight loss to improve his health, particularly as to his breathing [R. 260-61]. No doubt recognizing that obesity can often be associated with respiratory disorders and contribute to lower activity (thus, for instance, depression), *see* SSR 19-2p; 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, Listing 3.00(O), a pulmonology practitioner also recommended that he stop smoking cigarettes (three packs daily), which he eventually did in late 2021 until he returned to the habit in 2022, and marijuana (three joints daily), but he reported he would not stop that [R. 355-56].

Recounting the entirety of Mr. Murphy's medical history, the administrative decision assessed his obesity to be a severe impairment [R. 21]. The decision also considered the combination of all impairments, including obesity, in determining that he had not medically met the severity of one of the listed impairments [R. 21-22]. The decision repeatedly discussed his challenges with breathing, standing, walking at times, and other activities over the course of his treatment history [R. 23-25]. His obese condition thus wasn't ignored or overlooked. And no one posits any error in the administrative decision to this point.

It might be intuited that the ALJ kept obesity front of mind in turning to make an RFC determination, but the administrative decision never explicitly discusses obesity or how this

severe impairment combined or interacted with other conditions to justify a certain residual functional capacity. Indeed, obesity is not mentioned by name anywhere in the RFC determination [R. 22-26]. As a logical step, once the opinion acknowledged that Mr. Murphy suffered from obesity, "he was obligated to discuss how it would affect the RFC in combination with [his] other impairments." *Hensley v. Saul*, 2021 U.S. Dist. LEXIS 36371, 9-10 (N.D. Ind. Feb. 26, 2021); *see Clifford*, 227 F.3d at 873; *Hernandez v. Astrue*, 277 F. Appx. 617, 623-24 (7th Cir. 2008). "If the ALJ thought that [the claimant's] obesity has not resulted in limitations on [his] ability to work, [she] should have explained how [she] reached that conclusion." *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012). Doing so would ensure that, not just the claimant, but a reviewing court would understand how this severe impairment factored into the RFC analysis.

Even so, even if this was error because the administrative decision omitted an explicitly-built "logical bridge between the evidence and [its] conclusion," *Thomas*, 745 F.3d at 806, the court finds that this omission was harmless on this record. It would be a waste of time and resources to remand a case when the court can "predict with great confidence" what the result on remand will be. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). The law has "repeatedly excused" as harmless error a lack of specific discussion of obesity when the claimant remains silent about how his obesity exacerbated his conditions and further limited his functioning and when the administrative decision demonstrates that the ALJ reviewed the medical reports of doctors familiar with the claimant's obesity. *Hernandez*, 277 F. Appx at 624; *see also Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006) (claimant did not specify how obesity further impaired his ability to work and the ALJ implicitly considered obesity through review of medical reports); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (claimant did not further specify

the effects of obesity and the ALJ adopted the limitations suggested by specialists and reviewing doctors aware of the claimant's obesity). Such is the case here.

The burden remains on Mr. Murphy to establish the extent of disability, *Young*, 957 F.2d at 389, and he failed to specify during the administrative proceedings any evidence establishing additional functional incapacity caused by obesity. During his testimony at the administrative hearing, when asked what made him unable to work, Mr. Murphy described his difficulty breathing [R. 51-53]. He returns to that point on this appeal too, but the administrative decision discussed in considerable detail the medical history of his breathing difficulties, including medical records that addressed his other conditions in combination with reference to his obesity, in doing so; and the administrative decision further discussed his difficulty with breathing to include his testimony on this point in defining his residual functional capacity [R. 23-26], so much so that it cannot be said to have been disregarded.

Mr. Murphy argues that his BMI readings and treatment notes show that obesity adversely affected his other conditions. That may be true—hence the reason his treaters were focused on his efforts to help reduce his weight—but he points to nothing that would establish a functional restriction greater or different than the ALJ accounted in reaching her decision. For instance, no medical source opined that obesity limited Mr. Murphy more or precluded his ability to perform sedentary work, with the limitations already noted by the ALJ. No medical doctor or other source opined that his obesity required additional restrictions on tasks like sitting, standing, walking, or other activities. And though Mr. Murphy says his obesity takes on special import because he only has one remaining full lung (a fair point to acknowledge), no one can infer in the dark a functional limitation that has not been presented and supported with evidence. *See Jozefyk v. Berryhill*, 923

F.3d 492, 498 (7th Cir. 2019) (any RFC error was harmless when the claimant identifies no work restrictions that would stem from his alleged limitation); *see also Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it.").

The administrative decision also recounted the entire medical history to reveal that the ALJ carefully reviewed the medical reports from providers familiar with Mr. Murphy's obesity. For instance, the opinion cites extensively to nurse practitioners in pulmonology and a licensed mental health counselor, all of whom addressed his obesity, his breathing, his depression, and his need for activity and to reduce his weight, examining these conditions holistically together [R. 23-25, 258-98]. The ALJ discussed a musculoskeletal exam from a nurse practitioner who noted Mr. Murphy's height and weight as part of an assessment of his gait, muscle strength, and other physical capabilities [R. 25, 307-18]. The practitioner found that Mr. Murphy could sit and rise, and she saw no joint swelling or deformity and no "overt evidence of acute or chronic physical illness" [R. 310, 312], though she noted moderate limitation on walking for long periods [R. 313], something that the administrative decision accommodated in identifying sedentary work, with additional limitations at that, including use of a cane for prolonged ambulation [R. 22-23]. Even in these records, Mr. Murphy has not identified another limitation that the ALJ ignored in defining his residual functional capacity.

Of note, Mr. Murphy chose not to mention obesity when asked whether there were "any other problems" that he had not discussed with the ALJ at the administrative hearing [R. 60]. The only mention of Mr. Murphy's height and weight during his testimony was at the beginning,

when he was asked what it was and whether this was standard for him [R. 42]. He chose not to augment the record with any additional discussion of his obesity or how it might affect his abilities or limitations beyond what the medical record already communicated. The omission of separate discussion of obesity was harmless when he stayed quiet about how it further limited his functioning and when the administrative decision otherwise demonstrates that the ALJ reviewed the medical reports of those familiar with his obesity. *See Prochaska*, 454 F.3d at 736-37; *Skarbek*, 390 F.3d at 504.

Mr. Murphy argues that the administrative decision did not rely on a medical opinion that specifically noted obesity as an exacerbating factor, but the ALJ is not required to do so; and that seems a bit of an overstatement based on this record anyway. For one, the ALJ merely has to rely on reports from medical officials who "were aware of" his condition. *Skarbek*, 390 F.3d at 504; *see also Hoyt v. Colvin*, 553 F. Appx. 625, 628 (7th Cir. 2014) (no error when opinion relied on medical opinions of state-agency physicians who evaluated claimant's height and weight). For another, the record shows that Mr. Murphy's weight (obesity specifically) was documented and considered by medical providers as that affected his overall health [*e.g.*, R. 260-61, 307-13, 325-28]. Though the administrative decision should have addressed obesity directly, it cannot be said on the state of this record that this was anything but harmless.

## CONCLUSION

For these reasons, the court DENIES Mr. Murphy's request for remand and AFFIRMS the administrative decision. This order terminates the case.

SO ORDERED.

September 4, 2026

*s/ Damon R. Leichty*
Judge, United States District Court